IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

| | |
|---|---|
| COMPLETE BUSINESS | : CIVIL ACTION NO. 17-1133 |
| SOLUTIONS GROUP, INC., | : |
| | : |
| Plaintiff | : |
| | : |
| | : |
| | : |
| | : |
| v | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| NEW HORIZON MANAGEMENT | : |
| COMPANY, LLC, et al, | : Philadelphia, Pennsylvania |
| | : July 20, 2017 |
| Defendants | : 4:28 p.m. |

- - -

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE EDUARDO C. ROBRENO
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Plaintiff:     NORMAN M. VALZ, ESQUIRE
                       Norman N, Valz, P.C.
                       434 North 38th Street
                       Philadelphia, PA  19104


For the Defendant:     STEVEN A. HABER, ESQUIRE
                       Obermayer Redmann Maxwell &
                       Hippel LLP
                       Centre Square West
                       1500 Market Street
                       Suite 3400
                       Philadelphia, PA  19102

*Transcribers Limited*

*17 Rickland Drive*
*Sewell, NJ 08080*
*856-589-6100 · 856-589-9005*

2

1    Audio Operator:        Chris Kurek

2    Transcribed By:        Donna M. Anders

3                              - - -

4         Proceedings recorded by electronic sound
     recording; transcript produced by computer-aided
5    transcription service.

6                              - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          (The following was heard in open court at

2   4:29 p.m.)

3          THE COURT:  Good afternoon.

4          ALL:  Good afternoon, Your Honor.

5          THE COURT:  Please be seated.  Okay.  We are

6   here to consider the motion to dismiss so, Mr. Haber,

7   do you want to go forward?

8          MR. HABER:  Your Honor, thank you.  My motion

9   pending before the Court is a motion to dismiss under

10  Rules 12(b)(2) for lack of personal jurisdiction, as

11  well as 12(b)(6) for failure to state a claim.

12          As far as I can tell, Your Honor, based upon

13  the opposition received, there is no opposition to the

14  12(b)(6) motion.  There has been no suggestion that the

15  demurrer that we filed is, in effect, invalid, and so

16  should you rule that there is personal jurisdiction, I

17  would ask that you simply dismiss the case under Rule

18  12(b)(6).

19          The 12(b)(2) argument that we made, Your

20  Honor, is one where I represent nine defendants, eight

21  of which are from Florida, one of which is from

22  Washington, DC.

23          THE COURT:  What happened?  The other folks,

24  a default was entered against them, and they are not

25  part of the case?

4

1          MR. HABER:  Well, Your Honor, as I understand

2     it, the defendants who actually had some contact --

3          THE COURT:  Yes.

4          MR. HABER:  -- had a contract with the

5     plaintiff where perhaps they would have consented to

6     this Court's jurisdiction.  I believe he has taken a

7     default against that.

8          THE COURT:  Well, a default has been entered.

9     There has been no judgment entered, but a default --

10         MR. HABER:  Okay.

11         THE COURT:  -- has been entered.

12         MR. HABER:  So, the clerk has entered a

13    default.

14         THE COURT:  But, they have nothing to do with

15    you?

16         MR. HABER:  They do not.

17         THE COURT:  Okay.

18         MR. HABER:  And so the only connection, Your

19    Honor, as far as I can tell to this jurisdiction other

20    than the fact that this is where the plaintiff resides

21    is the plaintiff has a contract with one of those other

22    defendants.  That defendant has agreed in the contract

23    that Pennsylvania would be a jurisdiction where they

24    would agree to be sued.

25         THE COURT:  Which defendant is that?

1        MR. HABER:  I believe that is Mrs. Ford --

2        THE COURT:  Okay.

3        MR. HABER:  -- and her company.

4        THE COURT:  Okay.

5        MR. HABER:  But, Your Honor, my clients,

6   again, are either Florida defendants and/or a

7   Washington, DC defendant.

8        THE COURT:  Now, the motion to dismiss for

9   lack of personal jurisdiction probably would have to be

10   granted with leave to amend.  If such were the result,

11   should it also be leave to amend the complaint to state

12   a claim?

13        MR. HABER:  Well, Your Honor, I would argue

14   that there would be a waiver on the argument for the

15   failure to state a claim since the arguments have been

16   made, they have been presented to the Court and they

17   have been briefed by the defendant.

18        So, I would ask that if you are going to --

19   you know, if you were going to allow amendment for the

20   personal jurisdiction it would be moot.  There would be

21   no reason to do that.

22        I think you can't just grant my motion to

23   dismiss even if there is no opposition because you have

24   to take a look at it and consider the merits of it.

25        THE COURT:  Yes.

6

1      MR. HABER:  But, I do believe, however, that
2  if you were to review them you would find them to be
3  meritorious in that --
4      THE COURT:  But, they would be granted leave
5  to amend.
6      MR. HABER:  I think that that is probably
7  right then, Your Honor.
8      THE COURT:  Yes.  Okay.  Very good.  Thank
9  you.  Mr. Valz.
10      MR. VALZ:  Good afternoon, Your Honor.
11      THE COURT:  Okay.  There are no facts here in
12  the complaint.  Other than that, it is a great
13  complaint.  You've got a problem here, unless you can
14  come up with some facts that would put these defendants
15  in some relationship to Pennsylvania and, number two,
16  that you will set forth some facts that would state a
17  claim against them.  It's sort of a cry in the
18  wilderness for relief, but I don't see any facts.  Tell
19  me what happened here.
20      MR. VALZ:  Okay.  Well, all the defendants,
21  the Florida defendants --
22      THE COURT:  Yes.
23      MR. VALZ:  -- have a business model and it's
24  pretty much illustrated on Exhibit D in an e-mail.  It
25  is that they are going to get companies that have some

1    financial distress.  They are going to merge them into

2    Florida companies which will assume the debt.

3            THE COURT:  Right.

4            MR. VALZ:  They will take over part of the

5    management of it.  They will set up the Florida

6    entities, and then they allege that they are going to

7    give financing to these companies which will, in turn

8    -- and then they will do something called the Swiss

9    debt acquisition, I believe it's cram-down model,

10   wherein they will reduce the obligations to the

11   companies, in fact, in this instance it's Complete

12   Business Solutions Group.  They used this model three

13   times on our clients, Your Honor.

14           THE COURT:  I don't understand what you mean

15   by "your clients"?

16           MR. VALZ:  I'm sorry.  My client is Complete

17   Business Solutions Group.

18           THE COURT:  Right.  But they are in the

19   factoring business.

20           MR. VALZ:  That's correct.

21           THE COURT:  So, they have nothing to do

22   with -- all they do is they lend money.  So, how are

23   they affected by the --

24           MR. VALZ:  Well, the whole purpose --

25           THE COURT:  -- I mean, assuming all of that

8

1  is true --

2          MR. VALZ:  The whole --

3          THE COURT:  -- what do they have to do with

4  them?

5          MR. VALZ:  The whole business model is to

6  reduce the debt supposedly through merging the debt --

7  well, the companies, they are the clients of Complete

8  Business Solutions Group, into a new entity which these

9  Florida entities create, Your Honor.

10         THE COURT:  But, I don't understand how --

11 what do you call that?  What is the tort or the --

12         MR. VALZ:  Well, it's an attempt to

13 fraudulent transfer, first off.  It's a business model

14 based on fraudulent transfer.  They are going to

15 transfer the debt obligations, and my company has

16 purchased the receivables of these companies that the

17 Florida defendants target.

18         In this instance, the Ford Resource Group,

19 there is another company, Ansel (ph) Group and they are

20 targeted by the Florida defendants which then offers

21 them --

22         THE COURT:  But is your client a creditor?  I

23 guess your client is a creditor of the --

24         MR. VALZ:  It would be considered a creditor,

25 but really a purchaser of assets.

1    THE COURT:  Well, to be in a fraudulent

2  transfer, you have to be a creditor.

3    MR. VALZ:  Well, they are a creditor.

4    THE COURT:  Okay.

5    MR. VALZ:  It's fraudulent transfer or you

6  could call it conversion because they purchase the

7  receivables of these companies.

8    THE COURT:  Okay.

9    MR. VALZ:  And their purchased receivables

10  are then transferred by the Florida defendants to a new

11  company that's set up in Florida with a similar name,

12  I think it's Florida Resource.  Ford Resource Partners

13  was set up by them in Florida.  She took over the

14  receivables of Florida -- of Ford Resource Partners.

15    THE COURT:  So, these are folks to whom you

16  have -- lending money and the money is guaranteed by

17  the accounts receivable and --

18    MR. VALZ:  Well, we call it purchasing.  They

19  are purchasing the accounts receivable.

20    THE COURT:  They are purchasing the accounts

21  receivable.  What is the problem with what these third

22  parties are doing to you?

23    MR. VALZ:  Well, they are offering these

24  companies -- they are targeting these companies --

25    THE COURT:  Right.

1        MR. VALZ:  -- saying like, listen, don't pay

2 the money to them.  In other words, we're going to

3 merge your company into a Florida company which will be

4 then obligated to pay them, and we're going to reduce

5 the payments or the obligations to them unless we

6 change --

7        THE COURT:  Well, is there anything unlawful

8 or tortious about that other than maybe by judgment for

9 the people who sold you the accounts receivable?  The

10 injury, it seems to me, is to the merchants, isn't it?

11        MR. VALZ:  Well, to the merchant and us.  I

12 mean, that's property --

13        THE COURT:  Why to you?

14        MR. VALZ:  Because we have purchased the

15 receivables.  They are our property.

16        THE COURT:  Yes.  Okay.

17        MR. VALZ:  And they are being moved to

18 Florida in an attempt to thwart our ability to retrieve

19 the receivables which we have agreements to withdraw

20 from, you know, designated bank accounts.

21        THE COURT:  Okay.  Now, all of that seems to

22 me is not really apparent from the complaint.  Would

23 you agree with that?

24        MR. VALZ:  Yes.  I thought it was, but, yes,

25 I am --

11

1    THE COURT: Each of the defendants -- the

2    other thing is that you do something which I think we

3    call a shotgun pleading. That is, you shoot them with

4    a shotgun and hit all the defendants, but we don't

5    know.

6        I think that you are going to need to go back

7    and then file an amended complaint. The amended

8    complaint will have to allege facts first as to

9    personal jurisdiction as to each of the defendants,

10   what are the facts. I think you have some kind of

11   conspiracy in mind, but as to each of the defendants

12   what theory you are proceeding under.

13       Are going under specific jurisdiction,

14   general jurisdiction, or are you proceeding under sort

15   of this general theory of harm to the Calder case which

16   allows apparently some ability to keep in the fex (ph)

17   test of Calder versus Jones? Is that what you are

18   doing here?

19       MR. VALZ: Basically, yes.

20       THE COURT: Okay. Well, you have to flesh

21   that out as to each of the defendants. For example,

22   "He expressly aimed the tortious conduct at the forum

23   such that the forum can be said to be the focal point

24   of the tortious activity."

25       I think we need to understand that, and I

12

1    think you need to apply that test to each of the

2    defendants, you can't throw them all together.  I think

3    while you are at it, I also -- to the extent that --

4    you know, I think to short-circuit this matter, I mean,

5    we could go through that and then do a failure to state

6    a claim, but it seems to me in the interest of economy,

7    we ought to do the two together because either they

8    make it or they don't make it.

9            I think you will need to also -- an

10   alternative holding of the Court you fail to state a

11   claim, and it may be dicta if you have no personal

12   jurisdiction.  But, anyway, there again I think you

13   need to break this out.

14           For example, I see there are no allegations

15   against New Horizon Management Company.  There are no

16   allegations against New Hampshire Acquisition

17   Corporation.  There are no allegations against New

18   Hampshire Acquisition Business Trust.

19           Some of these other folks, you said like

20   Roussin and Matta, they played an active role.  I don't

21   know what that means.  The only one that has to me

22   perhaps a colorable connection here is Mr. Steadman.  I

23   think you need to flesh this out again as to what they

24   did.

25           MR. VALZ:  Okay.

13

1       THE COURT:  Then we can take a look at it and

2  see if you are in the right place.  I guess you would

3  like to be here, it's more convenient, but I think

4  there is an issue that needs to be, you know, out

5  front.

6       What about the argument that Mr. Haber makes

7  about the failure to state a claim.  You didn't oppose

8  that.

9       MR. VALZ:  Well, I believe that that is

10  basically throughout my response.  I reiterate the

11  claims that were made.

12       THE COURT:  I don't understand.  What do you

13  mean?

14       MR. VALZ:  Well, I mean -- and I did spend,

15  obviously, the bulk of the response in responding to

16  the jurisdictional issue because I thought that was --

17       THE COURT:  Right, exactly, so you didn't

18  really respond to the motion to state a claim.

19       MR. VALZ:  Okay.

20       THE COURT:  I think he is maybe technically

21  correct, but I think that it could be argued that since

22  there was a jurisdictional issue, we had to get that

23  first, so I will give you a break so you can address

24  this, you know, at this point.  So, how long do you

25  need?

14

1          MR. VALZ:  Say 30 days.

2          THE COURT:  30 days, okay.  Mr. Haber, what

3  do you think?

4          MR. HABER:  Whatever is okay with you is okay

5  with me, Your Honor.

6          THE COURT:  Okay.  Well, what do you think of

7  this result?

8          MR. HABER:  I think it is a wise decision.

9          THE COURT:  Okay.  By a wise judge, is that

10 right?

11         MR. HABER:  Exactly.

12         THE COURT:  Okay.  This man knows what he is

13 saying.  Okay.  I will enter an order today.  We will

14 get started.  We will see whether there is something

15 here or not.

16         MR. HABER:  Okay.

17         THE COURT:  If there is, we will go forward,

18 if not, I don't see any point in getting into

19 scheduling orders and all of that at this point.  Okay.

20 Very good.  Thank you.

21         MR. VALZ:  Thank you very much, Your Honor.

22         MR. HABER:  Thank you, Your Honor.

23         (Proceedings adjourned, 4:43 p.m.)

24                   * * *

25

<u>CERTIFICATION</u>

I, D.M. Anders, hereby certify that the foregoing is a correct transcript from the electronic sound recordings of the proceedings in the above-captioned matter.

8/3/17
_____
Date

_____
D.M. Anders